**Faye BETANCOURT Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Defendant.**

**No. 97 C 7777.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 5, 1998.

Joseph Moscov, Waukegan, IL, for Plaintiff.

AUSA, United States Attorney's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Plaintiff Faye Betancourt ("Betancourt") brings this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying Betancourt's claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), between March 2, 1981, her alleged onset date, and June 30, 1986, the date her insured status expired. The Administrative Law Judge ("ALJ"), found that, based on Betancourt's capacity, age, education, and work experience, she was "not disabled." (R. at 5–30.)

This matter comes before the Court on Betancourt's motion for summary judgment. This Court must decide whether substantial evidence in the record supports the ALJ's finding that Betancourt was "not disabled" under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, Rule 201.18, and that she could perform a full range of sedentary work prior to June 30, 1986. (R. at 28.) For the reasons stated herein, Betancourt's motion for summary judgment is denied and the ALJ's decision is affirmed.

## I. FACTUAL BACKGROUND

Faye Betancourt, a 58 year old woman with a 7th grade education, first applied for Disability Insurance Benefits on June 24, 1994, alleging that she had been unable to work since March 2, 1981, due to disabling conditions. (R. at 26.) Betancourt's application was denied initially, on request for reconsideration, at the hearing, and by the Appeals Council. (R. at 83, 89, 29, 3.)

Betancourt testified at a hearing before ALJ Carolyn Cozad Hughes on March 19, 1996 that in the 1970's she started suffering from pain in her knees, back, and head, and had blackout spells. (R. at 57.) Joe Betancourt, her husband, testified that in the 1970's, while she was still working as a security guard, his wife would come home in bad pain. (R. at 74.)

Betancourt testified that, in 1980 and 1981, she suffered such severe problems with her feet, knees, hips, back and head that she was forced to seek treatment. (R. at 60.) Medical records show that in 1980 and 1981 Betancourt went to Victory Memorial Hospital on several occasions with varying complaints. (R. at 276-287.) The medical records reflect that in early 1980 Betancourt was diagnosed with degenerative disc disease (arthritis) and an ulcer. (R. at 277, 278.) However, all other tests conducted at the time displayed normal results. (R. at 277.) Several months later, an evaluation revealed pain and stiffness in her shoulders and somewhat restricted movement in her legs. (R. at 279-80.) She was also diagnosed with hypertension, migraine headaches, chest pain, chronic back pain, cervical strain, and arthritis. (R. at 281.) Medical records also show that Betancourt also started receiving treatment for her back pain in late 1980. (R. at 282.)

In 1981, Betancourt stopped working because of arthritis in her feet and knees, migraine headaches, and lower back pain. (R. at 50, 53.) Betancourt testified to having awful headaches that would partially cut off her vision and affected her hearing after leaving her job. (R. at 67.) She further stated that her body aches were so severe that she could no longer engage in normal daily activities such as dressing herself, housework, climbing stairs, or sitting for long periods of time. (R. at 67-70) Joe Betancourt corroborated this testimony. (R. at 74-75.)

Betancourt testified that, in the 1980's, she would go to the doctor only once in a great while, because she could not afford medical care, but that in 1990 she started going to the doctor because she was in such severe pain. (R. at 72.) Betancourt stated that in 1983 she was receiving cortisone shots and prescriptions twice a week. (R. at 55.) She stated that in 1986 she was taking Motrin and Prednisone for her arthritis and headaches. (R. at 58.)

Betancourt underwent an examination in 1994 as part of her claim for Social Security Disability benefits. (R. at 122.) In this assessment Betancourt demonstrated the full range of motion of the spine and the ability to lift and carry minimal weight, stand or walk for about 6 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. (R. at 127-28.)

## II. THE DECISION OF THE ALJ

The ALJ applied the Commissioner's sequential evaluation of "disability" under 20 C.F.R. § 404.1520 to determine that Betancourt was not disabled. (R. at 26.) In making this determination, the ALJ found that Betancourt satisfied the first step of the five part test because she had not worked since her alleged onset date. (R. at 26.) The ALJ then determined that due to her obesity, history of hypertension, migraine headaches and low back pain, that Betancourt had a "severe impairment(s)," satisfying the second part of the test. (R. at 26.) Despite the determination of Betancourt's "severe impairment(s)," the ALJ concluded that Betancourt did not have an impairment or combination of impairments meeting or equaling the criteria of any section of the Listing of Impairments, thus not meeting the third part of the test. (R. at 26.) Under steps four and five of the test, the ALJ concluded that although Betancourt could not perform her past relevant work, she was able to perform at least the full range of sedentary work as of her date last insured. (R. at 28.)

The ALJ also considered the hearing testimony and the medical evidence in deciding that Betancourt was not disabled. (R. at 26-

29.) The ALJ found that x-rays taken on June 28, 1984 showed the same medical problems which were present in April 1980 but no other evidence of arthritis. (R. at 27.) She also found that the medical records contained scarce evidence of a medical impairment between 1981 and 1990 and that Betancourt had no reliable recollection of what was going on from the time she stopped working to her last date insured. (R. at 27.) The ALJ noted that although Betancourt testified that she stopped working because of medical problems including arthritis in her knees and feet, lower back pain, and migraine headaches, Betancourt had also testified that these problems had existed since the 1970's and that she had stopped working to be home with her children. (R. at 27.)

The ALJ agreed that arthritis is a progressive disease but found that the first indication in the medical records of serious pain from arthritis was in April 1991. (R. at 27.) From this the ALJ inferred that the symptoms prior to her date last insured were not of disabling severity. (R. at 27.) The ALJ's conclusion was also based on the lack of medical records or other reliable evidence to establish an onset date before 1991. (R. at 28.) The ALJ found that, using considerations in 20 C.F.R. § 404.1529, the claimant's complaints were not fully credible. (R. at 28.)

Under 20 C.F.R. § 404.1569, the ALJ applied the facts and her findings to the vocational rule in an effort to reach a decision. (R. at 28.) The ALJ, finding that the claimant was a "younger individual" in 1986; that she completed the seventh grade; and, that her past relevant work was unskilled, found that Rule 201.18 directs a finding of not disabled. (R. at 29); 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, Rule 201.18. Thus, the ALJ found, "[t]he claimant was not under a 'disability,' as defined by the Social Security Act, at any time through June 30, 1986." (R. at 29) (citing 20 C.F.R. § 404.1520(f)).

### III. THE DECISION OF THE APPEALS COUNCIL

Betancourt's request for review of the ALJ's decision was denied by the Appeals Council. (R. at 3.) The Appeals Council stated that although they reviewed the contentions raised by Betancourt, as well as additional evidence including her representative's letters and a letter and affidavit from Betancourt's daughter, neither the contentions raised nor information presented provided a basis for changing the ALJ's decision. (R. at 3.)

### IV. THE STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that "the findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993). When the Appeals Council denies a request to review a case, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. of Health and Human Serv.,* 983 F.2d 815, 817 (7th Cir.1993). The district court is not free to consider evidence submitted for the first time to the Appeals Council. *Id.* The correctness of the ALJ's decision rests on the evidence that was part of the record as existed when that decision was made. *Id.* Summary judgment is the manner in which these issues are presented.

A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1985). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *see also Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The ALJ's decision must be affirmed if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support the claimant's argument. 42 U.S.C. § 405(g); *see also Pope v. Shalala,* 998 F.2d

473, 480 (7th Cir.1993). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815 n. 1, 117 L.Ed.2d 38 (1992). Finally, a credibility determination made by the ALJ will not be disturbed unless it is patently wrong. *Brewer v. Chater*, 103 F.3d 1384, 1392 (7th Cir.1997).

In the present case, the ALJ's decision stands as the Commissioner's final decision because the Appeals Council denied Betancourt's request for review. Evidence that was not before the ALJ, including letters from Betancourt's representative and daughter as well as an affidavit from her daughter, was submitted to the Commissioner for consideration of Betancourt's request for review. This evidence will be looked at by this Court only for the limited purpose of seeing that the ideals of fairness and justice are served by this Opinion and Order. This Court cannot consider such evidence substantively and will confine its review to the evidence that was before the ALJ. *See Eads*, 983 F.2d at 817.

## V. ESTABLISHING A DISABILITY

■■■ Establishing a disability under the Social Security Act is a two-step process. First, the plaintiff must suffer from a medically determinable physical or mental impairment, or a combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir.1980).

■■■ That factual determination is made by using a five-step process. *See* 20 C.F.R. § 416.920. The five-step process is as follows: (1) is the claimant presently unemployed; (2) is the claimant's impairment "severe"; (3) does the impairment meet or equal one of the specified impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) is the claimant unable to perform her past relevant work; and (5) does the claimant's age, education, and past work experience, in reference to the residual functional capacity, enable her to do other work. 20 C.F.R. § 416.920(b)-(f). An affirmative answer at any step leads either to the next step of the test, or, if at the third and fifth step, to a finding that the claimant is disabled. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984). Other than at step three, a negative answer leads to a determination that the claimant is not disabled. *Id.*

■■■ The claimant has the burdens of production and persuasion on steps one through four. *Tom v. Heckler*, 779 F.2d 1250, 1253 (7th Cir.1985). However, once the claimant shows an inability to perform past work (step four), the burden shifts to the Commissioner to show that the claimant has the ability to engage in some other type of substantial gainful employment (step five). *Id.* Medical–Vocational Guidelines in appendix 2 may be used to determine if a claimant is or is not disabled. 20 C.F.R. § 404.1569. Use of the Vocational Guidelines is proper at step five of the test. *See Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987).

## VI. THE ALJ'S DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD

The Court finds that there is substantial evidence in the record to support the ALJ's factual determination of Betancourt's claim through use of the five-step process under 20 C.F.R. § 416.920(b)-(f). At the time of hearing: (1) Betancourt was unemployed; (2) Betancourt's impairment was "severe"; (3) Betancourt's impairment does not meet or equal any of the listings of specified impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) Betancourt was unable to perform her past relevant work; and (5) there exists significant numbers of jobs in then national economy which she can perform, as determined by application of the vocational rule at 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, Rule 201.18. (R. at 28–29.)

Betancourt argues that the ALJ "failed to meet its burden as to step 5 of the five-part test." (Pl.'s Br. at 3); 20 C.F.R. § 416.920(b)-(f). Betancourt claims that finding her able to perform sedentary work prior to June 30, 1986 was erroneously predicated on "the relative absence of medical

care during the middle 1980's." (Pl.'s Br. at 3.) The Court disagrees.

### A. The Medical Evidence in this Case Provides Substantial Evidence to Support the Finding that the Claimant was "Not Disabled ."

The medical evidence in this case was sufficient to provide substantial evidence supporting the ALJ's finding. Plaintiff's brief asserts that the ALJ impermissibly decided this case based on a lack of medical treatment in the years preceding Betancourt's date last insured. (Pl.'s Br. at 4.) The existence of relevant medical evidence and the ALJ's credibility determination, discussed below at B, belie this argument. Plaintiff also argues that the ALJ's decision can only be read to mean that Betancourt's arthritis existed in 1980 and then disappeared until sometime after her date last insured. (Pl.'s Br. at 3.) The ALJ has never suggested such a finding.

Claimant testified that she was not able to obtain medical records from doctors she had seen in the years after she left work in 1981, and when she was last insured in 1986. (R. at 55.) However, there is medical evidence from that time period which speaks directly to the issues in this case. A doctor compared the two x-rays of Claimant's lumbar spine, one from 1980 and one from 1984, and found that her sacro-iliac joints appeared normal and the degenerative changes had been present at the earlier exam. (R. at 246, 277.) The x-ray from April 10, 1980 disclosed that the vertebral bodies and their proceeds were normal. (R. at 277.) After discussing the two X-rays, the ALJ found that the Claimant's lumbar spine had not progressively worsened between 1980 and 1984. While the ALJ agreed with the Claimant that arthritis is a progressive disease, the first indication in the medical records that she had serious pain from arthritis came in April 1991. (R. at 27.)

This Court has also reviewed the evidence submitted to the Appeals Council, not presented to the ALJ. Although substantive review is restricted to the evidence which was before the ALJ, see Eads, 983 F.2d at 817, even if this additional evidence were to be considered substantively, the Court's decision would remain the same. Evidence of Betancourt's x-ray of April 10, 1980 and Dr. Siddique's discharge notes from April of 1980 was before the ALJ. It was also highlighted in a letter from Claimant's representative of June 30, 1997 to the Appeals Council. (R. at 6.) Betancourt continued to work for eleven more months after this x-ray and her discharge from the hospital. ˙

Claimant argues that she was disabled between March 2, 1981 and June 30, 1986. During that time she was hospitalized once, for a three-day period, unrelated to arthritis. (R. at 241.) All of this medical evidence points to the Claimant as not disabled during the period in question. Consequently, the ALJ's decision is supported by substantial evidence.

### B. The ALJ's Credibility Determination is not Patently Wrong and Thus Will not be Disturbed.

An ALJ's determination of credibility must be upheld where, as here, it can not be said to be patently wrong. Brewer, 103 F.3d at 1392. The ALJ's finding that Betancourt's complaints were not fully credible can not be said to be patently wrong. Determinations of credibility are traditionally reserved for the trier of fact, as they are in the best position to observe the witnesses. See Zalewski v. Heckler, 760 F.2d 160, 165–167 (7th Cir.1985).

The ALJ found that the claimant "had no reliable recollection as to what was going on from the time she stopped working through her date last insured." (R. at 27.) In the ALJ's opinion, she noted that Betancourt testified to having pain as early as the 1970's and that this was the cause of Betancourt having to leave work in 1981. (R. at 27.) But, as the ALJ discussed, Betancourt also testified that she had to be home with her daughter, who was undergoing eye surgery, around the same time. (R. at 27.) Further, Betancourt's testimony regarding her medical care for that time period was both that she was not receiving medical care because she could not afford it and that she may have been seeing doctors whose records are no longer available. (R. at 27.) This contradictory testimony and written evidence regarding the reason Betancourt stopped working

factored into the ALJ's determination of Betancourt's credibility.

The final step in evaluating Betancourt's credibility was to evaluate it using the considerations of 20 C.F.R. § 404.1529. This subsection, *How we evaluate symptoms, including pain*, provides in pertinent part:

> Statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a). The ALJ found that there were "no medical records or other reliable evidence establish[ing] an onset date prior to 1991." (R. at 28.) The various pains which Betancourt testified to had not been treated until some time after her date last insured. (R. at 27–28.) In fact, the ALJ noted that Betancourt's testimony when compared with medical records showed that Betancourt's chest pains did not begin until almost eight years after her date last insured. Through application of the aforementioned facts, as well as the facts of the entire record, the ALJ found that under 20 C.F.R. § 404.1529, Betancourt's "complaints were not fully credible." (R. at 28.) The ALJ's credibility determination can not be said to be patently wrong and as such will not be disturbed. *See Brewer*, 103 F.3d at 1392.

**C. The Use of a Vocational Rule to Determine that the Claimant Was "Not Disabled" is Supported by Substantial Evidence.**

▮ The ALJ used the vocational rule grid ("grid") to determine that Betancourt was not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1; (R. at 29). Use of the grid alone constitutes substantial evidence sufficient to uphold the decision of the Secretary. *See Heckler v. Campbell*, 461 U.S. 458, 468, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The determination to use the grid is factual and will thus be upheld if supported by substantial evidence. *See Walker*, 834 F.2d at 640.

▮ The grid used by the ALJ may be used where there has been a finding that the claimant possesses a "residual functional capacity [of a] maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairment(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1. The ALJ found Betancourt's testimony that she was disabled before her last date insured to be not fully credible. (R. at 28.) Thus the ALJ found from all of the evidence, and in agreement with Betancourt's Occupational Capacity Assessment (R. at 127), that Betancourt "had the residual functional capacity to perform the physical exertion requirements of work except for lifting more than 10 pounds 'frequently' and 20 pounds 'occasionally.'" (R. at 29) (citing 20 C.F.R. § 404.1545). With this finding the application of the grid was permissible. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1.

This grid functions through the application of the variables of age, education, and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1. Once the relevant findings were made by the ALJ, she applied them to the grid which directed a finding of not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, Rule 201.18; (R. at 29). The decision to use the grid is supported by substantial evidence and it alone provides the substantial evidence necessary to uphold the Secretary's decision. *See Heckler*, 461 U.S. at 468, 103 S.Ct. 1952.

**VII. CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, and the decision of the ALJ dated April 8, 1996 is affirmed. Judgment is entered in favor of Defendant, Kenneth S. Apfel, Commissioner of Social Security, and against Plaintiff, Faye Betancourt.